## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ANTHONY P. KENYON, | CV 25-11-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| RELIANCE STANDARD LIFE INSURANCE COMPANY and JOHN DOES 1–10, | |
| Defendants. | |

This action was originally brought by Plaintiff Anthony P. Kenyon ("Kenyon") in the Montana Thirteenth Judicial District Court, Yellowstone County, against Defendants Reliance Standard Life Insurance Company ("Reliance") and John Does 1–10. (*See* Doc. 1-1.) On January 17, 2025, Reliance timely removed the action, invoking both the Court's federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332. (*See* Doc. 1.)

Presently before the Court are Reliance's Motion To Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Kenyon's Motion To Remand. (Docs. 2, 8.) The Court held a hearing on the motions on June 11, 2025. (Doc. 16.) The motions are fully briefed and ripe for the Court's review. (*See* Docs. 3, 9, 11, 12, 13, 14.)

1

For the following reasons, Kenyon's Motion To Remand is DENIED and Reliance's Motion To Dismiss is GRANTED, without prejudice and with leave to amend.

## I.    BACKGROUND

The following facts are taken from Kenyon's Amended Complaint, filed in state district court on November 19, 2024.  (Doc. 1-1.)

In 2004, Kenyon began working as a pipefitter for CHS, Inc., in Laurel, Montana, and subsequently became a member of United Steel Workers Local 11-443 (the "Union").  As a benefit to its members, the Union offered participation in a long-term disability insurance policy through Reliance (the "Policy").  Kenyon participated in the Union's disability insurance plan.  (Doc. 1-1 at 2.)

In 2013, Kenyon was diagnosed with common variable immunodeficiency. Beginning in October 2019, Kenyon was unable to work on a full-time basis due to recurrent pneumonia and infections.  In January 2020, he applied for long-term disability benefits under the Policy.  Reliance initially denied coverage, but later reversed the adverse benefit determination and concluded that his condition qualified for coverage under the Policy.  (Doc. 1-1 at 3–4.)

Following his July 2020 termination of employment at CHS, Inc., Kenyon elected to roll a portion of his pension into an individual retirement account (IRA) and took the balance as a lump sum payment.  Reliance determined that it was

2

entitled to offset the value of Kenyon's pension (and accrued sick time) against his monthly benefit amount under the Policy.  Reliance later reversed this decision, however, and determined it could only offset the value of the lump sum payment.  In June 2021, Reliance communicated to Kenyon that the "claim decision is now final."  (Doc. 1-1 at 4–5.)

But in December 2023, Reliance again reversed its calculation and assessed additional offsets relating to the pension funds Kenyon rolled into his IRA.  After unsuccessfully appealing this re-calculation determination, Kenyon brought this action in Montana state district court.  (*See* Doc. 1-1 at 5–6.)

In his Amended Complaint, Kenyon requests declaratory judgment (Count I) and brings causes of action for breach of contract (Count II) and violation of Montana's Unfair Trade Practices Act (UTPA) (Count III).  On January 17, 2025, Reliance filed its Notice of Removal and, seven days later, filed the Motion To Dismiss now before the Court.  (Docs. 1, 2.)  On February 13, 2025, Kenyon filed his Motion To Remand that is also now before the Court.  (Doc. 8.)

## II.    LEGAL STANDARDS

### A.    Motion To Remand

"On a plaintiff's motion to remand, it is a defendant's burden to establish jurisdiction by a preponderance of the evidence."  *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016).  When ruling on such a motion, the

court generally looks to the complaint and the notice of removal. *Emeldi v. Univ. of Or.*, 698 F.3d 715, 731 (9th Cir. 2012); *see also Britton v. Rolls Royce Engine Servs.*, 2005 WL 1562855, at *2 (N.D. Cal. June 30, 2005). "When the plaintiffs' motion to remand raises a factual challenge by contesting the truth of the remover's factual allegations, usually by introducing evidence outside the pleadings, however, the remover must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Defiore v. SOC LLC*, 85 F.4th 546, 552–53 (9th Cir. 2023) (alterations and internal quotation marks omitted). Thus, "[i]f the remand motion challenges subject matter jurisdiction, the court may look to any relevant information the parties may present . . . ." *Kernan v. Health Care Serv. Corp.*, 2018 WL 3046961, at *3 (C.D. Cal. June 19, 2018).

Even when the requirements for subject matter jurisdiction are satisfied, however, federal courts have the power to decline jurisdiction and remand the action to state court when the relief sought is discretionary in nature. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996). Such discretionary relief includes declaratory judgments. *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 802 (9th Cir. 2002). The party asking the court to decline jurisdiction over such an action bears the burden of showing that the relevant factors tilt in favor of abstention. *See State Farm Fire & Cas. Co. v. Scott*, 2007 WL 9711107, at *7 (D. Haw. Jan. 10, 2007).

4

**B.    Motion To Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs a motion to dismiss for failure to state a claim upon which relief can be granted.  "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See, e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, "bare assertions[,] amounting to nothing more than a 'formulaic recitation of the elements' for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alterations omitted).  Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation.  *Id.*

/ / /

5

In general, a court may not consider materials outside the complaint in

considering a motion to dismiss under Rule 12(b)(6). *Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Cervantes v. City of*

*San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("Review is limited to the complaint;

evidence outside the pleadings . . . cannot normally be considered in deciding a

12(b)(6) motion.") (internal quotation marks and citation omitted).  The Federal

Rules make clear that, if a court does consider documents outside the pleadings, a

Rule 12(b)(6) motion must be converted to a motion for summary judgment.  Fed.

R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the

pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56.").

In certain circumstances, however, extrinsic evidence may be considered by

the court without converting a Rule 12(b)(6) motion to a motion for summary

judgment.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Specifically, a

court may consider evidence outside the pleadings if the complaint "necessarily

relies" on that evidence—in other words, (1) the complaint refers to the document;

(2) the document is central to the plaintiff's claim; and (3) no party questions the

document's authenticity.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see*

*also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a

document is not attached to a complaint, it may be incorporated by reference into a

complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

## III.    DISCUSSION

The Court will first address Kenyon's Motion To Remand and determine whether this case should be remanded for lack of subject matter jurisdiction or any other ground presented in Kenyon's motion.  If remand is not appropriate, the Court will proceed to Reliance's Motion To Dismiss.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("[J]urisdiction generally must precede merits in dispositional order.").

Because several of the arguments presented by the parties in their respective briefs are relevant to both questions—remand and dismissal—the Court will take the liberty of pulling from all available briefs in deciding both issues.

### A.    Motion To Remand

Kenyon argues this action should be remanded to state court on two grounds. First, Kenyon contends that the Court lacks subject matter jurisdiction.  Kenyon points out that diversity jurisdiction is not satisfied on the face of the Amended Complaint.  In addition, Kenyon challenges the basis for federal question jurisdiction and disputes the application of the Employee Retirement Income Security Act of 1974 (ERISA) to this case.  (Doc. 9 at 2; *see* Doc. 1 at 5).

/ / /

Second, Kenyon argues that, even if this Court has subject matter jurisdiction over this action, the Court should abstain from exercising jurisdiction to avoid needless determinations of Montana insurance and contract law. Kenyon asserts these issues are better suited for determination by the Montana state courts.

### 1.    Diversity Jurisdiction

In opposing Reliance's assertions of diversity jurisdiction, Kenyon argues that he has specifically pled in his Amended Complaint that the amount in controversy is "not in excess of $74,999." (Doc. 9 at 8; *see* Doc. 1-1 at 10.) Reliance does not address Kenyon's argument in its response brief. (*See* Doc. 11; *see also* Doc. 13 at 3.)

Given Reliance's burden to establish subject matter jurisdiction, the Court agrees that Reliance's failure to respond in its opposition brief to Kenyon's argument in his opening brief regarding the amount in controversy constitutes Reliance's waiver or abandonment of that issue. *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). Reliance further conceded at the hearing on June 11, 2025, that there was no basis for diversity jurisdiction.

Accordingly, it is uncontested that the amount-in-controversy requirement is not satisfied and, therefore, diversity jurisdiction does not exist.

/ / /

8

## 2.    Federal Question Jurisdiction Pursuant to ERISA

Reliance asserts, however, that Kenyon's Motion To Remand should be denied because Kenyon's causes of action are within the scope of § 502(a) of ERISA, 29 U.S.C. § 1132, and are, therefore, removable to federal court.  (Doc. 11 at 1, 3–4, 7–8.)

"Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (internal quotation marks and alterations omitted).

Section 502(a) constitutes ERISA's civil enforcement mechanism.  It allows a participant or beneficiary of an employee benefit plan to bring a civil action against the plan itself, the plan administrator, or a third-party insurer "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206–07 (9th Cir. 2011) (discussing who may be sued).

/ / /

/ / /

ERISA § 502(a) displaces certain types of state-law claims, and complaints filed in state court purporting to plead such state-law causes of action are removable to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 60, 67 (1987). Specifically, "[i]f state-law causes of action come within the scope of § 502(a)(1)(B), those causes of action are completely pre-empted, and the only possible cause of action is under § 502(a)(1)(B)." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009). "A party seeking removal based on federal question jurisdiction must show . . . that the state-law causes of action are completely preempted by § 502(a) of ERISA . . . ." *Id.* at 945.

This doctrine of complete preemption pursuant to ERISA § 502(a), and the defendant's ability to remove claims on that basis, represents "an exception to the otherwise applicable rule that a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Marin Gen. Hosp.*, 581 F.3d at 945 (internal quotation marks omitted). As the removing party, the defendant bears the burden of demonstrating that the plaintiff's claims are completely preempted by ERISA § 502(a). *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018). *See McGill v. Pac. Bell Tel. Co.*, 139 F. Supp. 3d 1109, 1117 (C.D. Cal. 2015); *Mendelsohn v. Intalco Aluminum Corp.*, 2006 WL 3192513, at *3 (W.D. Wash. Nov. 2, 2006).

/ / /

Therefore, to determine whether the case was properly removed from state court, the Court must determine whether ERISA preemption provides federal question jurisdiction in this case. To do so, the Court will first determine whether the Policy is an employee benefit plan governed by ERISA. If so, the Court must proceed to determining whether Kenyon's claims are completely preempted by ERISA § 502(a)(1)(B)

### a.     Whether the Policy Is Governed by ERISA

An ERISA-governed plan—or, in the specific context of this case, an "employee welfare benefit plan"—includes

> any plan, fund, or program which was . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1).[1]

In the context of this case, for Reliance to show that the Policy constitutes an employee welfare benefit plan under ERISA, Reliance must show that the Policy satisfies five elements:

---

[1] For purposes of ERISA, an employee organization includes "any labor union . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships . . . ." 29 U.S.C. § 1002(4). Here, the Court agrees with Reliance that the Union constitutes an employee organization as defined in ERISA.

(1)    a plan, fund, or program;

(2)    established or maintained;

(3)    by an employee organization;

(4)    for the purpose of providing disability benefits;

(5)    for the participants or their beneficiaries.

*Silvera v. Mut. Life Ins. Co.*, 884 F.2d 423, 425 (9th Cir. 1989).

It appears the parties dispute only one of those elements here.  Specifically,

Kenyon argues that the Policy was not "established or maintained" under the above

definition because the Policy falls under the so-called "safe harbor" established by

federal regulation.  (Doc. 12 at 9–10; *see also* Doc. 9 at 7.)

Under the safe harbor regulation, "a group or group-type insurance program

offered by an insurer to . . . members of an employee organization" is not governed

by ERISA so long as four conditions are met:

> (1) No contributions are made by an . . . employee organization;
> (2) Participation the program is completely voluntary for . . .
> members;
> (3) The sole functions of the . . . employee organization with
> respect to the program are, without endorsing the program, to permit
> the insurer to publicize the program to . . . members, to collect
> premiums through payroll deductions or dues checkoffs and to remit
> them to the insurer; and
> (4) The . . . employee organization receives no consideration in
> the form of cash or otherwise in connection with the program, other
> than reasonable compensation, excluding any profit, for administrative
> services actually rendered in connection with payroll deductions or
> dues checkoffs.

29 C.F.R. § 2510.3-1(j).  Employee organizations "must satisfy all four requirements of the safe harbor regulation for otherwise qualified group insurance plans to be exempt from ERISA coverage." *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000).

The safe harbor regulation also "clarifies the meaning of 'established or maintained' for the purposes of an ERISA plan." *Webb v. Hartford Life & Acc. Ins. Co.*, 2010 WL 4810719, at *3 (D. Nev. Nov. 19, 2010) (citing *Meadows v. Emp'rs Health Ins.*, 826 F. Supp. 1225, 1228 (D. Ariz. 1993)).  That is, "behavior inconsistent with any one of the above criteria [in the regulation] would constitute evidence of the establishment of a plan." *Silvera*, 884 F.2d at 426.  Nevertheless, "a program that fails to satisfy the [safe harbor] regulation's standards is not automatically deemed to have been 'established or maintained' by the employer, but, rather, is subject to further evaluation under the conventional tests." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 997 F.3d 848, 857–58 (9th Cir. 2021) (quoting *Stuart*, 217 F.3d at 1153 n.4).  Thus, if the safe harbor does not apply, "[t]he existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." *Stuart*, 217 F.3d at 1149 (internal quotation marks omitted).

/ / /

Reliance argues that the safe harbor does not apply to the Policy because two of the four conditions are not met.  Specifically, Reliance argues that the program was not "voluntary" for members, and that the Union "endorsed" the Policy.  *See* 29 C.F.R. §§ 2510.3-1(j)(2) (participation in program must be "completely voluntary"), 2510.3-1(j)(3) (employee organization must perform functions "without endorsing the program").  "To avoid any issue of fact," however, Reliance focuses its argument on the question of endorsement.  (Doc. 14 at 2.)

For purposes of the safe harbor regulation, an employer has "endorsed" a plan if, "in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package."  *Steigleman v. Symetra Life Ins. Co.*, 701 F. Supp. 3d 924, 933 (D. Ariz. 2023), *aff'd*, 2025 WL 602175 (9th Cir. Feb. 25, 2025) (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1135 (1st Cir. 1995)).

Reliance asserts the Union "endorsed" the Policy here by being designated as the plan administrator.  (Doc. 3 at 10–11.)  Reliance's position finds some support in decisions within this circuit.  Several decisions have at least considered an employee organization's role as plan administer to be a factor in finding endorsement of the plan.  *See, e.g.*, *Gonzales v. United of Omaha Life Ins. Co.*,

14

2013 WL 12133687, at *8 (C.D. Cal. Oct. 22, 2013) (designation as plan administrator is factor in finding endorsement); *Singh v. United of Omaha Life Ins. Co.*, 2011 WL 4345876, at *2 (E.D. Cal. Sept. 15, 2011) (employer, as administrator of plan, endorsed it for purposes of safe harbor); *LaPrease v. Unum Life Ins. Co. of Am.*, 347 F. Supp. 2d 944, 950 (W.D. Wash. 2004) ("By serving as the Plan Administrator and potentially paying for some employees' benefits, NCO in effect endorsed the Plan.").

Additionally, the Ninth Circuit's decision in *Kanne v. Connecticut General Life Insurance Co.*, 867 F.2d 489 (9th Cir. 1988), appears to consider the employee organization's function as plan administrator to be determinative of the endorsement issue.  There, the plan brochure described the employer group to which the plaintiff's employer belonged as the administrator of the plan.  *Id.* at 491.  The court in *Kanne* concluded, "[i]t is clear that, at a minimum, [the employer group] does not merely advertise the group insurance, but rather, as the administrator of the plan, 'endorses' it within the meaning of 29 C.F.R. § 2510.3-1(j)(3)."  *Id.* at 493.  *See also Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) (citing *Kanne* and finding the employer "'endorsed' the plan by serving as administrator of the plan").

After the *Kanne* decision, however, the Ninth Circuit recognized that being designated as plan administrator, standing alone, may not be determinative of the

broader issue of whether a plan falls within ERISA.  In *Zavora v. Paul Revere Life Insurance Co.*, 145 F.3d 1118 (9th Cir. 1998), the court acknowledged its holding in *Kanne* "that being administrator of a plan 'endorses it within the meaning of the regulation.'"  *Id.* at 1121.  But the court also pointed out that the fact the plan does not fall within the "safe harbor" regulation does not necessarily settle the question of whether the employer "established or maintained" the policy to bring it within ERISA.  Rather, "[t]hat evidence must be considered along with 'all surrounding circumstances' to determine whether an ERISA plan exits."  *Id.*  In distinguishing *Kanne*, the plaintiff in *Zavora* argued that the employer was "administrator in name only," and "had nothing to do with the operation of the insurance 'plan.'"  *Id*.  The court agreed to the extent that the plaintiff had produced sufficient evidence to raise a triable issue of fact on the issue, precluding summary judgment.  *Id*. at 1122.

In this case, however, there is ample evidence to establish both (1) the Union endorsed the plan for purposes of the safe harbor regulation, and (2) the Union established and maintained the plan to bring the plan within the scope of ERISA.

The plan documents submitted in support of the current motions consist of the Policy and the "Summary Plan Description."  (Docs. 3-1, 3-3.)[2]  In reviewing

---

[2] The Amended Complaint refers to the Policy (Doc. 1-1 at 3), both plan documents are central to the Kenyon's claim, and no party questions the

the plan documents, the Union is named as the policyholder, the plan
administrator, and the designated agent for service of process. (*See* Docs. 3-1 at 1;
3-3 at 2–3.) As discussed above, if not determinative, the designation as plan
administrator provides strong evidence of endorsement.

It is also clear from the plan documents that the Union is more than a plan
administrator "in name only." For example, the Union retained "the right, at any
time, to amend or terminate the Plan or amend or eliminate benefits under the Plan
for any reason." (Doc. 3-3 at 3.) Several cases have considered the right to modify
or terminate a plan as a factor in finding endorsement and ERISA coverage. *See,
e.g.*, *Wilson v. Provident Life & Acc. Ins. Co.*, 101 F. Supp. 3d 1038, 1044 (W.D.
Wash. 2015) (power to amend, modify, or terminate plan at any time is factor in
determining employer's endorsement of plan); *Leonard v. MetLife Ins. Co.*, 2013
WL 12210177, at *4 (C.D. Cal. Feb. 25, 2013) (same); *Singh*, 2011 WL 4345876
at *2 (same); *LaPrease*, 347 F. Supp. 2d at 950 (employer's sole discretion to
amend, modify, or terminate plan "constitute[s] more than simply collecting
premiums through payroll deductions and remitting them" to insurer).

/ / /

/ / /

---

documents' authenticity. Therefore, the Court will consider the plan documents in
connection with both the Motion To Remand and Motion To Dismiss.

Several decisions have also considered express references to ERISA in a plan as evidence that the employer intended to establish an ERISA plan. *Stuart*, 217 F.3d at 1154 (policy tended to prove intent to create ERISA plan by referring to ERISA); *Sarraf*, 102 F.3d at 993 (characterizing plan as an ERISA plan evidences plan to create ERISA plan); *Kanne*, 867 F.2d at 493 (describing plan as an ERISA plan evidences intent to create ERISA plan). *See also Wood v. Blue Cross-Blue Shield of Neb., Inc.*, 2015 WL 6755192, at *4 n.4 (C.D. Cal. Nov. 3, 2015) (characterizing plan as an ERISA plan evidences plan to create ERISA plan); *Leonard*, 2013 WL 12210177 at *4 (plan naming employer as plan administrator and fiduciary "for purposes of ERISA" evidences intent to create ERISA plan).

Here, the Policy provides that the Union, as policyholder, was required to "establish and maintain procedures which comply with the . . . Plan Administrator responsibilities of ERISA and the accompanying regulations." (Doc. 3-1 at 10.) Those responsibilities include furnishing summary plan descriptions, statements, schedules, other notices to participants and beneficiaries, and filing reports and notices with the Department of Labor and the Pension Benefit Guaranty Corporation. *See* 29 U.S.C. §§ 1021, 1024, 1132, 1166.

The Policy also provides that Reliance is required to advise the insured of his right to bring a civil action under ERISA § 502(a) in the event of an adverse

benefit decision.  (Doc. 3-1 at 15–16.)  The Policy further notes that if an insured's claim is subject to ERISA, an insured must exhaust all appeal procedures provided by the Policy, and the Summary Plan Description also outlines the insured's rights and protections under ERISA.  (*Id.* at 17; Doc. 3-3 at 13–15.)

The Union's designated duties and responsibilities under the Policy also demonstrate that the Union had a significant role in the maintenance of the plan. The Union was responsible for distributing a certificate of insurance to each insured, which outlined the coverage and explained the provisions, benefits, and limitations of the Policy; the Union was required to maintain records of each insured's insurance, including additions, terminations, and changes; the Union was responsible for notifying Reliance of all individuals eligible for coverage as well as any changes in those eligible for insurance and coverage amounts; the Union was responsible for providing Reliance with accurate census and salary information on all insureds; and the Union was ultimately responsible to pay all premiums to Reliance when due under the Policy.  (Doc. 3-1 at 10.)

Based on the provisions of the plan documents alone, the Court agrees with Reliance that the Policy was endorsed by the Union and falls outside the safe harbor.  These same facts also establish that the Policy was established and maintained by the Union for purposes of bringing the plan within the scope of ERISA.  An objectively reasonable employee would conclude from the Union's

19

actions that it had not merely facilitated the availability of the long-term disability insurance program but established and maintained it.[3]

Having determined that the Policy is governed by ERISA, the Court must now determine whether the claims are completely preempted and subject to removal.

### b.    Whether Kenyon's Claims Are Completely Preempted

As discussed above, state-law causes of action that come within the scope of ERISA § 502(a)(1)(B) are completely preempted. *Marin Gen. Hosp.*, 581 F.3d at 946. Courts use a two-prong test to determine whether an asserted state-law claim comes within the scope of that statute. Under the so-called *Davila* test, "a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions." *Marin Gen. Hosp.*, 581 F.3d at 946 (quoting *Davila*, 542 U.S. at 210) (alteration and internal quotation marks omitted).[4]

---

[3] The Court also recognizes that this Court recently found that this exact plan is governed by ERISA, and that this Court has jurisdiction of the ERISA claims pursuant to 28 U.S.C. § 1331. *See* Order at 8, *McLeod v. Reliance Standard Life Ins. Co.*, No. CV-22-97-BLG-SPW-KLD (D. Mont. Jan. 27, 2025), ECF No. 47.

[4] In support of its Motion To Dismiss, Reliance cites to the standard for conflict preemption under ERISA § 514(a), arguing that Kenyon's causes of action "relate to" employee benefit plans governed by ERISA under that section. (Doc. 3

#### i.     Whether Kenyon Could Have Brought His Claims Under ERISA

Kenyon's Amended Complaint alleges three causes of action: first, request for declaratory judgment (Count I); second, breach of contract (Count II); and third, violation of the UTPA (Count III). If these claims could have been brought under ERISA § 502(a), the first prong of the complete preemption test is satisfied.

As to Count I, the Court finds the first *Davila* prong is satisfied. In his request for declaratory judgment, Kenyon asks the Court to "determine the rights and responsibilities of the parties under the Policy and Montana law . . . with

---

at 15–16.) In contrast to complete preemption, however, "conflict preemption under § 514(a) of ERISA[] is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)." *Marin Gen. Hosp.*, 581 F.3d at 945. In other words, "[a] provision of state law may 'relate to' an ERISA benefit plan, and may therefore be preempted under § 514(a)[,] . . . [b]ut a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court." *Id.* Therefore, "if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) because the plaintiff's claims 'relate to' an ERISA plan, the district court is without subject matter jurisdiction." *Id.* (alterations and internal quotation marks omitted).

The Court also notes that several decisions in this circuit are inconsistent in their use of terminology regarding the different types of ERISA preemption. Some cases refer to the above § 514(a) preemption as "express preemption," rather than conflict preemption, as the court does in *Marin General Hospital* and other cases. Even more confusingly, various Ninth Circuit decisions use the term "conflict preemption" to refer to complete preemption under § 502(a). *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019). To avoid confusion, this Court will refer to preemption under § 502(a) exclusively as complete preemption.

respect to his CHS, Inc. Pension and the Policy's 'Other Income Benefit' section."

(Doc. 1-1 at 6.)  Because ERISA § 502(a)(1)(B) would have allowed Kenyon, as a

"participant," to bring a civil action "to clarify his rights to future benefits under

the terms of the plan," he could have brought Count I under ERISA.  *See, e.g.*,

*Collazo v. Infonet Servs. Corp.*, 2015 WL 13917163, at *7 (C.D. Cal. Apr. 8, 2015)

(concluding that the plaintiff's "cause of action seek[ing] declaratory relief based

on the benefits allegedly owed" is "recoverable under § 502(a)(1)(B)").

As to Count II, the Court again finds the first *Davila* prong is satisfied.  In

that claim, Kenyon seeks recovery for damages suffered as a result of Reliance

having "breached the contract of insurance"—the Policy.  (Doc. 1-1 at 9.)  Because

Kenyon could have brought a civil action under ERISA "to recover benefits due to

him under the terms of his plan, [and] to enforce his rights under the terms of the

plan," he could have brought Count II under ERISA § 502(a)(1)(B).  *See, e.g.*,

*Heldt v. Guardian Life Ins. Co. of Am.*, 2017 WL 980181, at *5 (S.D. Cal. Mar. 13,

2017) (concluding that "Plaintiff's breach of contract claim seeks to enforce one of

his alleged rights under the terms of the Policy, and his claim therefore falls under

the scope of ERISA § 502(a)(1)(B)").

Kenyon's UTPA claim in Count III requires a closer look.  In his Amended

Complaint, Kenyon alleges a violation of UTPA § 201(1) as the basis for his cause

of action, which states: "A person may not, with such frequency as to indicate a

22

general business practice, . . . misrepresent pertinent facts or insurance policy provisions relating to coverages at issue . . . ." Mont. Code Ann. § 33-18-201(1). That section is actionable through UTPA § 242(1), which provides: "An insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation of 33-18-201(1) . . . ." *Id.* § 33-18-242(1).

The Ninth Circuit, as well as this Court, have consistently found that claims under Montana's UTPA fall within the scope of ERISA. In *Elliot v. Fortis Benefits Insurance Co.*, 337 F.3d 1138 (9th Cir. 2003), for example, the Ninth Circuit held that ERISA § 502 preempted the plaintiff's claims brought pursuant to UTPA § 242 for the insurer's alleged violations of UTPA § 201, including subsection (1). *Id.* at 1147; *see id.* at 1141 n.2. Because *Elliot* predated *Davila*, the court of appeals did not base its decision on the two-prong test discussed above. Instead, based on its reading of the U.S. Supreme Court's then-recent decision in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), the court concluded that UTPA § 242 was preempted by ERISA § 502 because the Montana statute expanded the potential scope of ultimate liability imposed by ERISA. *Elliot*, 337 F.3d at 1146–47. Specifically, the UTPA's civil enforcement provision in § 242 provided civil damages above and beyond those provided in ERISA, including punitive damages. *Id.* at 1147. *See* Mont. Code Ann. § 33-18-242(5).

23

Thus, by "seek[ing] non-ERISA damages for what are essentially claim processing causes of action," the plaintiff's suit "clearly falls under [ERISA § 502] preemption." *Elliot*, 337 F.3d at 1147 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)).

This Court has since relied on *Elliot* to conclude that plaintiffs' UTPA claims were preempted by ERISA § 502. In *Ford v. CIGNA Corp.*, 2012 WL 5931887 (D. Mont. Nov. 27, 2012), the Court concluded that the plaintiff's claims were preempted because she sought relief under UTPA § 242 for improper claims handling and processing. *Id.* at *2. The Court reasoned that, pursuant to *Elliot*, claims under that statute were "completely preempted under [ERISA] § 502(a) because they would allow for relief that is unavailable under ERISA and are inconsistent with ERISA's exclusive remedial scheme." *Id.* at *2–3.

The Court similarly determined in *Collection Bureau Services, Inc. v. Birnel*, 2006 WL 8435932 (D. Mont. Aug. 2, 2006), that a cause of action for unfair claims settlement practices brought under UTPA § 201 was preempted by ERISA § 502. *Id.* at *3–4. The Court concluded that the Ninth Circuit's holding in *Elliot* foreclosed the viability of a claim brought pursuant to UTPA § 201. *Id.*

In a more recent case, the Ninth Circuit affirmed this Court's order finding the plaintiff's UTPA claims were preempted by ERISA § 502. *Meyer v. United Healthcare*, 840 Fed. App'x 174, 175 (9th Cir. 2021). In that case, the plaintiff

asserted that the defendant insurer violated UTPA § 102 by engaging in unfair acts when the insurer allowed a hospital to bill him in excess of the in-network maximum. *See Meyer v. UnitedHealthcare Ins. Co.*, 2020 WL 2112044, at *1 (D. Mont. May 4, 2020); *see also* Mont. Code Ann. § 33-18-102(1) ("No person shall engage in this state in . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."). The plaintiff also alleged violations of UTPA § 242 for the insurer's alleged breach of contract and acts of fraud. *Meyer*, 2020 WL 2112044 at *1. *See* Mont. Code Ann. § 33-18-242(3). This Court concluded that each of these claims were preempted by ERISA's civil enforcement provision pursuant to *Elliot*. *Meyer*, 2020 WL 2112044 at *4. The court of appeals agreed, noting that the plaintiff's suit "exclusively focuses on a claim-payment dispute covered by ERISA's comprehensive scheme." *Meyer*, 840 Fed. App'x at 175. Therefore, because ERISA § 502 was "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits," the plaintiff's UTPA claims were completely preempted. *Id.* (quoting *Elliot*, 337 F.3d at 1144).

Here, in considering the above cases and the statutes at issue, the Court finds that Kenyon's claim for alleged violations of UTPA § 201(1) could have been brought under ERISA. Although *Meyer* did not implicate UTPA § 201(1), the Court finds that this claim similarly focuses on a claim-payment dispute covered

by ERISA's comprehensive scheme.  As stated in *Elliot* and the cases from this Court, claims for unfair or improper claims handling and processing under the UTPA fall within ERISA's scope.  Therefore, Kenyon's claims meet the first prong of *Davila*'s complete preemption test.

### ii.    Whether There Is Another Independent Legal Duty Implicated by Reliance's Actions

For purposes of determining complete preemption, "[s]tate-law claims are based on other 'independent legal duties' when they are in no way based on an obligation under an ERISA plan and would exist whether or not an ERISA plan existed."  *Depot, Inc.*, 915 F.3d at 667 (quoting *Marin Gen. Hosp.*, 581 F.3d at 950) (internal quotation marks omitted).  For example, a state-law claim arising from an insurer's misrepresentations in the course of marketing its plan to the plaintiff—and the effect of those misrepresentations on the plaintiff's decision to subscribe to the insurance plan—is one based on a legal duty independent of those imposed by ERISA.  *Id.*  That is because such a claim is not merely an alternative enforcement mechanism to a federal ERISA claim, and would exist regardless of whether an ERISA plan existed.  *Id.*

In this case, however, none of Kenyon's claims are based on independent legal duties.  As alleged in the Amended Complaint, his request for declaratory judgment and his breach-of-contract claim in Counts I and II clearly seek relief

26

arising from Reliance's alleged obligations under the Policy.  (*See* Doc. 1-1 at 6–9.)  As to his UTPA claim in Count III, Kenyon states in the Amended Complaint that the alleged violations of UTPA § 201(1)—i.e., the "misrepresent[ations of] pertinent facts or insurance policy provisions relating to coverage at issue"—arise from "Reliance Standard's acts and omissions alleged above."  (*Id.* at 9.)  The acts and omissions Kenyon "allege[s] above" in the Amended Complaint, however, do not include misrepresentations that preceded his participation in the Policy or affected Kenyon's decision to subscribe to the Policy.  Any damages arising from alleged misrepresentations, such as Reliance's benefit calculation and its representation to Kenyon that its June 2021 claim decision was "final" (*see id.* at 5), correspond with those benefits Kenyon alleges are due under the terms of the Policy itself.

Accordingly, having already concluded that Kenyon's claims satisfy the requirements of the first prong of the *Davila* test, and determining here that they also fall squarely within the second, the Court concludes that Kenyon's state-law causes of action are completely preempted by ERISA § 502(a).  Therefore, Reliance has met its burden of showing that removal of this action based on federal question jurisdiction was proper.

/ / /

/ / /

27

### 3.    Abstention of Jurisdiction

As a final basis for remand, Kenyon argues that, even if ERISA preempts his claims, this Court should abstain from exercising jurisdiction over this action because the Montana state courts retain concurrent jurisdiction over the subject matter of this suit.  (Doc. 9 at 10.)  Kenyon cites the *Brillhart* abstention doctrine in support of his assertion that the Court should avoid making a needless determination of state contract or insurance law.  *See generally Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  (Doc. 9 at 10–13.)  In response, Reliance rejects the characterization that this action involves state-law issues, arguing instead that this lawsuit "involves the interpretation of an ERISA-governed plan" and, therefore, that Reliance has an "absolute right" to remove this action to federal court.  (Doc. 11 at 4–5.)

"*Brillhart* governs situations in which a party urges a district court to decline to exercise jurisdiction over an otherwise proper declaratory judgment claim." *Cincinnati Ins. Co. v. Nw. Painting, Inc.*, 2021 WL 3142163, at *7 (D. Mont. July 26, 2021) (citing *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 668 (9th Cir. 2005)).  Under *Brillhart* and its progeny, courts consider whether and to what extent abstaining from exercising jurisdiction over a claim for declaratory relief would accomplish any of the following purposes: (1) avoiding a needless determination of state-law issues, (2) discouraging litigants from filing declaratory

28

actions as a means of forum shopping, and (3) avoiding duplicative litigation.

*Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1120, 1225 (9th Cir. 1998).

This case does not present the circumstances contemplated by the *Brillhart* abstention doctrine. This case does not, as Kenyon argues, involve a needless determination of state law. While state law is not irrelevant to ERISA claims, "the interpretation of ERISA insurance policies is governed by a uniform federal common law, not state law." *Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120, 1130 n.8 (9th Cir. 2022) (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990)) (internal quotation marks omitted). The Court has already determined above that ERISA completely preempts Kenyon's declaratory judgment claim as well as the other claims in the Amended Complaint. Therefore, the substantive issues in this case will not be determined by Montana contract or insurance law. Retaining jurisdiction here will not necessitate needless determinations of state law on the part of this Court.

In summary, the Court has subject matter jurisdiction over Kenyon's claims because the Policy at issue is governed by ERISA and each claim is completely preempted by ERISA § 502(a)(1)(B). The factors that may otherwise lead a court to decline jurisdiction are not present in this case.

Accordingly, Kenyon's Motion To Remand is DENIED.

/ / /

**B.    Motion To Dismiss**

Reliance has filed its motion under Rule 12(b)(6) on the grounds that (A) "Kenyon has asserted only state law claims," (B) "those claims are preempted by ERISA" and, therefore, (C) "the first amended complaint should be dismissed." (Doc. 2 at 1.)

State-law causes of action against an insurer fail to state a claim when they are completely preempted by ERISA § 502(a). *Cleghorn v. Blue Shield*, 408 F.3d 1222, 1227 (9th Cir. 2005). That is because such claims, once found to be preempted by ERISA, no longer provide a cognizable legal theory—regardless of whether the plaintiff has alleged sufficient facts to state a claim that would otherwise be plausible on its face. *See, e.g.*, *Wagoner v. First Fleet Inc.*, 2022 WL 3213266, at *5 (D. Ariz. Aug. 9, 2022); *IV Solutions Inc. v. United Healthcare Servs. Inc.*, 2012 WL 12887401, at *1 (C.D. Cal. Nov. 19, 2012). Therefore, such claims are subject to dismissal. *Cleghorn*, 408 F.3d at 1227.

Here, each count in Kenyon's Amended Complaint is a state-law claim completely preempted by ERISA § 502(a). This alone subjects the Amended Complaint to dismissal.[5]

---

[5] Reliance also argues that Kenyon's claims are preempted by ERISA § 514(a). (*See* Doc. 3 at 13–14.) Preemption under this section of ERISA also provides grounds for dismissal. *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000). Because the Court concludes that dismissal is warranted pursuant to § 502(a), however, the Court need not address these other grounds.

Nevertheless, the Court will briefly address the crux of Kenyon's argument in opposition to Reliance's motion. Kenyon asserts that his "allegations specific to the application of ERISA's Voluntary Plan Safe Harbor" must be "taken as true." (Doc. 12 at 9.) Thus, according to Kenyon, his Amended Complaint is sufficiently plausible on its face to survive a motion to dismiss. Kenyon's argument is unpersuasive, for several reasons.

First, the dispositive issue regarding the applicability of the safe harbor regulation—whether the Union endorsed the Policy—is not addressed in the Amended Complaint. As to the question of endorsement, Kenyon asserts only that his "employer, CHS, Inc., did not endorse the Voluntary Union's Reliance Standard group insurance program." (Doc. 1-1 at 3.)

Further, even if Kenyon's employer's non-endorsement of the Policy were dispositive to the safe harbor's applicability, which it is not, its inclusion in the Amended Complaint is merely a legal conclusion couched as a factual allegation. Accordingly, the Court is not bound to accept such an allegation as true.

Kenyon also contends that the "allegations . . . set forth in Tony's First Amended Complaint are more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' because the allegations are supported by Tim Rickett, President of the Voluntary Union." (Doc. 12 at 11.) But Mr. Rickett's supporting facts are not included in the Amended Complaint—

31

Plaintiff references his affidavit filed in another case.  Even if these facts were included as allegations in the Amended Complaint, however, this characterization is directly contradicted by the plan documents themselves, as outlined above.

Finally, Mr. Rickett's statements would not alter the Court's conclusion on the safe harbor issue.  In fact, his Declaration includes additional facts which would further support a finding that the Union endorsed the plan.  For example, it appears from Mr. Rickett's Declaration that the Union selects the insurance policy and offers it for a vote to the Union members.  (Doc. 3-4 at 2.)  An employee organization endorses an insurance plan by its involvement in the provision of those benefits, including by assessing the quality of coverage and limiting the selection to the coverages offered to employees.  *Steigleman*, 701 F. Supp. 3d at 933–34.  It further appears from Mr. Rickett's Declaration that any questions regarding the availability of insurance are directed to the Union representative. (Doc. 3-4 at 3.)  When a representative of the employer takes on the role of explaining the benefits to new employees, this also constitutes evidence of endorsement.  *Galloway v. Lincoln Nat'l Life Ins. Co.*, 2010 WL 2679894, at *6 (W.D. Wash. July 2, 2010).

Accordingly, Kenyon's Amended Complaint lacks a cognizable legal theory. Therefore, his Amended Complaint is subject to dismissal.

/ / /

With that said, the Court will grant Kenyon leave to file a second amended complaint. *See Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1133 (9th Cir. 1992) (directing district court to allow plaintiffs to file an amended complaint pleading a federal claim under ERISA after dismissal of preempted state-law claims).

## IV.    CONCLUSION

Based on the foregoing, IT IS ORDERED:

1.    Kenyon's Motion To Remand (Doc. 8) is DENIED.

2.    Reliance's Motion To Dismiss (Doc. 2) is GRANTED, without prejudice and with leave to amend to state a federal cause of action under ERISA. Kenyon may file a second amended complaint on or before August 8, 2025.

DATED this 18th day of July, 2025.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge